UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**C.A.L.L. Group, Inc.**

    v.                                                           Case No. 08-CV-391-PB
                                                                    Opinion No. 2009 DNH 124

**Exxon Mobil Corporation**

**MEMORANDUM AND ORDER**

Plaintiff C.A.L.L. Group, Inc. ("CALL") filed an action in New Hampshire Superior Court against Exxon-Mobil Corporation ("Exxon") and Caron and Sons Mobil, Inc. ("Caron"). Prior to commencing this lawsuit, CALL operated two Exxon Mobil gasoline sites: the first, located at 250 South Willow Street, Manchester, New Hampshire ("South Willow Street Location"), and the second, located at 210 Eddy Road, Manchester, New Hampshire ("Eddy Road Location").

Exxon has removed the case to this court, and CALL now requests that the matter be remanded to state court. The central question presented by CALL's motion for remand is whether one or more of its claims are completely preempted by the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801-2806.[1]

---

[1] CALL filed an objection to removal (Doc. No. 5), which I treat as a motion because it seeks affirmative relief.

I.  **BACKGROUND**

CALL operated two Mobil-branded retail stations in Manchester, New Hampshire. The South Willow Street Location consisted of a gasoline business and a "Mobil Mart" convenience store. The Eddy Road Location similarly had a gasoline business and a "Mobil On-the-Run" convenience store. (Def. Exxon's Resp., Doc. No. 11-2, at 2.) With respect to the South Willow Street Location, CALL's relationship with Exxon was controlled by a "PMPA Franchise Agreement" ("South Willow Street Franchise Agreement"), which contained provisions relevant to both the lease of the property and the operation of the "Mobil Mart."[2] The parties' relationship with respect to the Eddy Road Location was governed by to two, distinct documents. The first, another "PMPA Franchise Agreement" ("Eddy Road Franchise Agreement"), explained that with its termination, "the Franchise . . . and all related and supplemental agreements terminate and Franchise Dealer shall stop all operation of the Motor Fuels Business and

---

[2] The parties disagree as to the number of agreements in existence for the South Willow Street Location. CALL suggests that a separate agreement governed the "Mobil Mart," but Exxon disputes this and insists that only the South Willow Street Franchise Agreement existed.

-2-

the Related Businesses."  (Eddy Road Franchise Agreement, Doc. No. 11-6, at 3.)  The parties also entered into an "On-the-Run Convenience Store Franchise Agreement" ("Eddy Road Convenience Store Agreement") that applied only to the "On-the-Run" convenience store.

    The alleged factual circumstances that brought about this lawsuit are set forth in CALL's Complaint.  In 2004, CALL negotiated with a Dunkin Donuts franchise to operate a satellite Dunkin Donuts at the South Willow Street Location.  CALL claims that the plan was approved by Phil Hayes, a representative of Exxon.  (Complaint, Doc. No. 1-2, ¶ 7.)  At a December 14, 2004, meeting with senior managers from Exxon, CALL set out its plan: it would convert the South Willow Street Location's "Mobil Mart" to an "On-the-Run" convenience store and sell Dunkin Donuts coffee.  Exxon officials "did not indicate any disapproval." (Id. ¶ 9.)  CALL later received a "sample Mobil/Dunkin Donuts contract," but then "heard nothing further from Exxon about [CALL's] request to convert to an 'On-the-Run' operation selling Dunkin Donuts products."  (Id. ¶ 12.)  In June 2005, CALL learned that its franchise would not be renewed.  CALL claims that it was given the option to purchase the South Willow Street Location,

but it was unable to ascertain the terms.  "Approximately two years after the discussion concerning the purchase of the property," Exxon, through Hayes, advised that it would sell the property for $1.2 million, but CALL would be required to spend an additional $200,000 to "bring the site up to Exxon's standard." (Id. ¶ 17.)  In November 2007, CALL closed the South Willow Street Location.

   Beginning on June 14, 2002, CALL was authorized to operate a "Mobil On-the-Run" convenience store and a gas station at the Eddy Road Location.  In January 2007, CALL decided to sell the Eddy Road Location to Jonathan and Christine Cyr, who agreed to the purchase price of $495,000.  CALL notified Exxon of the pending sale, and on May 25, 2007, Exxon "elected to not excise its rights of first refusal."  (Id. ¶ 22.)  Exxon furnished CALL with the requirements needed for the transfer, and Jonathan and Christine Cyr submitted the appropriate documents to Exxon. Jonathan Cyr then attended a training seminar, which Caron, acting as Exxon's agent, conducted.  (Id. ¶ 24.)  CALL alleges that, at some point, Caron made "disparaging statements" to Jonathan Cyr about CALL, the Eddy Road Location, the purchase price, and other issues.  CALL claims that this was done to

encourage Jonathan and Christine Cyr to reconsider the proposed Eddy Road Location transaction.  (Id. ¶ 26.)  Ultimately, the CALL-Cyr transaction did not take place, and CALL eventually closed the Eddy Road Location on February 29, 2008.  In total, CALL claims that the defendants' conduct resulted in CALL's "loss of investment, lost business opportunities, unnecessary expenses, lost profit, attorney's fees and other damages."  (Id. ¶ 29.)  This lawsuit followed.

CALL's Complaint consists of six counts.  Count 1 alleges that Exxon breached an implied covenant of good faith and fair dealing when it failed to cooperate with CALL's plans to transfer ownership of the Eddy Road Location, failed to timely respond to CALL's interest in purchasing the property at the South Willow Street Location, failed to timely respond to CALL's plans for a Dunkin Donuts site at the South Willow Street Location, treated CALL differently than other franchisees of "On-the-Run" market stores, improperly failed to renew the "Mobil Mart" franchise agreement at the South Willow Street Location,[3] disparaged CALL to prospective purchasers, and unreasonably withheld consent to

---

[3] The Complaint is not clear about which location is being referenced, but I assume it is referring to the South Willow Street Location.

the approval of the transaction.[4]  Count 2 alleges that Exxon breached its contract with CALL when, after first agreeing to allow CALL to offer for sale Dunkin Donuts products at the South Willow Street Location, Exxon refused to permit CALL to do so and then declined to renew the "Mobil Mart" franchise agreement.

Count 3 alleges that Exxon and Caron tortuously interfered with the contract between CALL and Jonathan and Christine Cyr, under which Jonathan and Christine Cyr were to purchase the Eddy Road Location.  CALL claims that the defendants sabotaged its contractual relationship with Jonathan and Christine Cyr in the following ways:  Exxon unreasonably failed to approve the prospective purchasers as operators, Exxon and Caron disparaged CALL in an effort to scuttle the transaction, and Caron -- as part of the effort to scuttle the transaction -- misrepresented Jonathan Cyr's abilities while conducting a training program.

Count 4 alleges that Exxon and Caron conspired to commit an unlawful act by engaging in conduct that was designed to sabotage the transaction between CALL and Jonathan and Christine Cyr.

---

[4]  The Complaint is not clear about which transaction is being referenced, but I assume it is referring to the CALL-Cyr transaction for the Eddy Road Location.

CALL alleges that the defendants' overt acts brought about the defendants' desired end, which was to block the CALL-Cyr deal from transpiring.  Count 5 alleges that Exxon and Caron were negligent because they breached their duty to reasonably conduct their affairs by engaging in behavior that harmed CALL's business interests.  Finally, Count 6 alleges that Exxon and Caron engaged in activity that rises to the level of unfair methods of competition and unfair and deceptive practices in violation of New Hampshire Consumer Protection law.  CALL seeks enhanced compensatory damages, as well as triple damages, attorney's fees, and costs pursuant to the New Hampshire Consumer Protection Statute, RSA § 358-A:10.

On September 19, 2008, Exxon removed the case to federal court claiming federal question jurisdiction over at least one of CALL's claims and supplemental jurisdiction over the remaining claims.  Defendants' assertion that the court had federal question jurisdiction was based on the premise that one or more of CALL's claims was completely preempted by the PMPA.  CALL objected to removal, arguing that the matter properly belongs in state court.

## II. STANDARD OF REVIEW

As a general principle, "an action is removable to a federal court only if it might have been brought there originally." Parker v. California, 1999 WL 111889, at *1 (N.D. Cal. Feb. 26, 1999); see Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). In other words, there must be either diversity of citizenship among the parties or a federal question in the claim. 28 U.S.C. §§ 1331, 1332. Where, as here, a plaintiff files a motion to remand a previously removed action, the defendant has the burden of proving that there is a basis for federal jurisdiction. Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998).

## III. ANALYSIS

In arguing for removal in this case, Exxon asserts that CALL has brought claims concerning termination and nonrenewal of a petroleum franchise contract, that such claims are completely preempted by the PMPA, and that as a result, there is federal question jurisdiction over those claims.

Complete preemption "is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law

claim is to be *recharacterized* as a federal claim."  Fayard v. Ne. Vehicle Servs., 533 F.3d 42, 45 (1st Cir. 2008).  The United States Supreme Court has applied the complete preemption doctrine sparingly.  See, e.g., Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003) (usury claims against national banks); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (benefit claims under ERISA); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (no-strike clause of labor contract).  Upon reviewing this landscape, the United States Court of Appeals for the First Circuit has articulated a two-pronged test to help courts decide whether a statute (in this case, the PMPA) supports complete preemption.  There is complete preemption when there is (a) "exclusive federal regulation of the subject matter of the asserted state claim" *and* (b) "a federal cause of action for wrongs of the same type."  Fayard, 533 F.3d at 46.

In a prior Order (Doc. No. 22), I instructed the parties to analyze this matter under the standard articulated in Fayard v. Northeast Vehicle Services.  See id.  CALL argues that it is not alleging "a federal cause of action . . . [or] seeking any remedy under the PMPA, but rather is solely relying upon state common law claims and a violation of the New Hampshire Consumer

Protection Statute."  (Pl.'s Mot. to Remand, Doc. No. 25, at 3-4.)  CALL goes on to argue that even if the PMPA completely preempts state law termination and nonrenewal claims, it still would not justify removal because CALL "has not alleged a wrongful termination or a wrongful nonrenewal of a petroleum agreement."  (Id. at 5.)  For its part, Exxon targets CALL's claims for breaches of contract and the implied covenant of good faith and fair dealing, wherein CALL alleges that Exxon improperly failed to renew the "Mobil Mart" franchise agreement at the South Willow Street Location.  (Def. Exxon's Resp., Doc. No. 29-2, at 3-4.)  Exxon argues that because the South Willow Street Location franchise was governed by a single agreement, which addressed both the lease of the property on which there was a gasoline business and the Mobil Mart, any "allegations regarding the improper nonrenewal of . . . [that agreement] necessarily implicate the PMPA."  (Id. at 5.)

The PMPA sets out the "precondition and grounds for termination or nonrenewal" of a franchise.  15 U.S.C. §§ 2802, 2803.  In passing the PMPA, Congress noted the necessity of a "single, uniform set of rules governing the grounds for termination and non-renewal of motor fuel marketing franchises

. . . ." S. Rep. No. 731, 95th Cong., 2d Sess., 19. This desire for uniformity in the termination of franchise contracts is reflected in the PMPA itself, which has a provision that specifically addresses preemption:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

Id. § 2806(a)(1). Thus, any conflicting state regulations concerning termination or nonrenewal of a petroleum franchise are explicitly preempted by the PMPA. Id.

In addition to regulating the termination and nonrenewal of petroleum franchise agreements, the PMPA also provides aggrieved franchisees with a federal cause of action: if "a franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of this title, the franchisee may maintain a civil action against such franchisor." Id. § 2805. Under Fayard, because the

PMPA provides exclusive regulating standards for the termination and nonrenewal of franchise relationships and sets out a specific federal cause of action for franchisees complaining about termination or nonrenewal, any claims of that kind must be asserted pursuant to the PMPA.  See 533 F.3d at 46.  Other courts have agreed that the PMPA has preemptive force with respect to this narrow class of claims.  See Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 299 (3d Cir. 2008) ("[W]hen state law claims are 'intimately intertwined' with the termination or nonrenewal of a franchise they are preempted by the PMPA.");  Mehdi-Kashi v. Exxon Mobil, 2002 WL 32052603, at *8 (S.D. Tex. Jan. 7, 2002).

In this case, the dispute centers around whether CALL is asserting claims that implicate the termination or nonrenewal of a franchise contract, namely the South Willow Street Franchise Agreement.  Although its complaint seeks damages for the nonrenewal of its franchise agreements, CALL's briefings disavow any claims for wrongful termination or nonrenewal. (Pl.'s Mot. to Remand, Doc. No. 25, at 5.)  As stated above, if CALL is, in fact, asserting state law claims for breach of contract and the implied covenant of fair dealing that concern termination or nonrenewal of a franchise agreement, those claims are completely

preempted.

If CALL intends to pursue claims for nonrenewal or termination, it has thirty (30) days to file an amended complaint restating those claims under the PMPA.  If, instead, CALL intends to disavow all termination and nonrenewal claims as its brief suggests, the court will decline to exercise supplemental jurisdiction over the remaining state law claims and an order will issue explaining that CALL does not assert claims of that kind, that the matter is remanded to state court, and that CALL is estopped from reasserting claims regarding termination or nonrenewal.  If the case is remanded, CALL's remaining state law claims would not be preempted, and it would be free to litigate them in state court.  Plaintiff's motion to remand (Doc. No. 24) is denied.

### IV.  CONCLUSION

Plaintiff has thirty (30) days from the date of this Memorandum and Order to clarify its position, explaining whether or not it intends to pursue claims regarding termination or nonrenewal of a franchise agreement.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 14, 2009

cc: William Aivalikles, Esq.
Paul D. Sanson, Esq.
Sonia M. Pedraza, Esq.
Courtney H.G. Herz, Esq.
Vaughn Finn, Esq.
Robert R. Lucic, Esq.
Douglas N. Steere, Esq.